# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 51873

TRACY ALLEN, an individual,

    Plaintiff-Counterdefendant-
    Respondent,

v.

JAMES ALLISON and ANNETTE
ALLISON, husband and wife,

    Defendants-Counterclaimants-
    Appellants,

and

IDAHO CENTRAL CREDIT UNION, a
foreign corporation; PIONEER TITLE
COMPANY OF KOOTENAI COUNTY,
an Idaho corporation; PLANET HOME
LENDING, LLC; FIDELITY
NATIONAL TITLE INSURANCE
COMPANY, a Florida corporation; and
DOES 1-10,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Filed: July 13, 2026

Melanie Gagnepain, Clerk

THIS IS AN UNPUBLISHED
OPINION AND SHALL NOT
BE CITED AS AUTHORITY

---

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Cynthia K.C. Meyer, Hon. Scott Wayman, and Hon. Barbara Buchanan, District Judges.

Judgment awarding foreclosure of mechanic's lien and attorney fees, <u>affirmed</u>.

Bistline Law, PLLC; Arthur M. Bistline, Coeur d'Alene, for appellants.

Smith & Malek; Pendrey Trammell, Coeur d'Alene, for respondent.

---

LORELLO, Judge

James Allison and Annette Allison, husband and wife, appeal from the judgment awarding foreclosure of a mechanic's lien and attorney fees. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Tracy Allen entered into a contract with the Allisons[1] to remodel the main floor of their home. Allen had previously completed a remodeling project in the basement of the Allisons' home, which they were satisfied with and timely paid Allen for. The contract to remodel the main floor of the home provided a price of $168,000, which included several installment payments. The Allisons paid Allen $30,000 to begin work and made several additional $30,000 payments. During the course of the home remodel, the Allisons sought to change the scope of the work, including enlarging the deck on the outside of the home and enlarging foundational concrete support tubes (sonotubes) under the deck. Allen's scope of work did not, however, include installing any part of the roof or gutters. After the basement and flooring of the home were damaged following a rainstorm, the Allisons demanded that Allen pay for the repairs. Allen refused and the parties' relationship became hostile. After finishing the work Allen was contracted to do on the home, he sent a full accounting and final invoice to the Allisons, which included documentation of the requested changes. When the Allisons did not pay the invoice, Allen filed a mechanic's lien and later filed suit for foreclosure of the mechanic's lien and breach of contract.[2]

In response, the Allisons asserted several alleged defects, two of which are relevant to this appeal. The Allisons claimed the siding boards on the outside of the home had bowed after installation and needed to be removed and replaced. In response, Allen offered to repair the siding boards in accordance with the manufacturer's guidelines; the Allisons refused this offer. The Allisons also claimed the sonotubes were settling and could cause future damage to the property. A trial was held and the district court found that Allen was entitled to foreclosure of the mechanic's lien and awarded judgment to him in the amount of $23,439.83--the balance on the contract after

---

[1]    The appellants' brief uses "the Allisons" and "the Allisions" interchangeably. We assume both refer to James and Annette Allison.

[2]    In his complaint, Allen also named Idaho Central Credit Union; Pioneer Title Company of Kootenai County, Inc.; Mortgage Electronic Registration Systems, Inc.; Fidelity National Title Insurance Company; and Does 1-10. However, these defendants are not relevant to this appeal.

2

subtracting the installment payments. The Allisons filed a motion to reconsider, which the district court denied. The district court then awarded Allen attorney fees in the amount of $157,241. The Allisons paid the entirety of the judgment to the clerk of the district court. The Allisons appeal.

## II.

## STANDARD OF REVIEW

Where a trial court sits as a finder of fact without a jury the court is required to enter findings of fact and conclusions of law. I.R.C.P. 52(a); *Est. of Hull v. Williams*, 126 Idaho 437, 440, 885 P.2d 1153, 1156 (Ct. App. 1994). Our review of the trial court's decision is limited to ascertaining whether substantial, competent evidence supports the findings of fact, and whether the trial court correctly applied the law to the facts as found. *Borah v. McCandless*, 147 Idaho 73, 77, 205 P.3d 1209, 1213 (2009); *Cummings v. Cummings*, 115 Idaho 186, 188, 765 P.2d 697, 699 (Ct. App. 1988). Thus, we defer to findings of fact that are not clearly erroneous, but we freely review the trial court's conclusions of law reached by applying the facts found to the applicable law. *Staggie v. Idaho Falls Consol. Hosps.*, 110 Idaho 349, 351, 715 P.2d 1019, 1021 (Ct. App. 1986). Where there is conflicting evidence, it is the trial court's task to evaluate the credibility of witnesses and to weigh the evidence presented. *Desfosses v. Desfosses*, 120 Idaho 354, 357, 815 P.2d 1094, 1097 (Ct. App. 1991). We will not set aside the trial court's factual findings as clearly erroneous if they are supported by substantial and competent, even if conflicting, evidence. *Kennedy v. Schneider*, 151 Idaho 440, 442, 259 P.3d 586, 588 (2011). Evidence is substantial and competent if a reasonable trier of fact would accept that evidence and rely on it to determine whether a disputed point of fact was proven. *Hull v. Giesler*, 156 Idaho 765, 772, 331 P.3d 507, 514 (2014); *Hutchison v. Anderson*, 130 Idaho 936, 940, 950 P.2d 1275, 1279 (Ct. App. 1997).

## III.

## ANALYSIS

The Allisons assert the district court erred in granting Allen judgment in the amount of $23,439.83 for his remaining bill after the foreclosure of the mechanic's lien. The Allisons contend the district court incorrectly concluded that they were not entitled to damages for Allen's incorrect installation of their siding and that the sonotubes were installed correctly and did not require repair. The Allisons also assert the district court erred in awarding attorney fees to Allen. Allen responds that the Allisons' appeal is moot because the entire amount of the judgment was voluntarily paid

3

to Allen.  Alternatively, Allen responds that, even if the appeal is not moot, the district court's findings of fact and conclusions of law are supported by substantial and competent evidence.  We hold that, pursuant to current Idaho Supreme Court precedent, payment of the judgment did not render the appeal moot.  On the merits, we hold that the Allisons have failed to show error in either the district court's findings of fact or its application of the law.

## A.    Mootness

Allen asserts that the arguments presented by the Allisons are moot because they voluntarily paid the entire judgment to the court clerk prior to appealing.  The Allisons respond that the issues raised on appeal are not moot because, under the relevant case law and statutory guidelines, payment of the judgment did not foreclose them from challenging the judgment on the merits.  We agree with the Allisons that the appeal did not become moot by virtue of them paying the judgment.

Idaho Code Section 10-1115 explains the procedure for a release of lien and satisfaction of a judgment:

> As a further procedure for the satisfaction of a judgment, and in addition to the satisfaction of a judgment as provided by law or rule of the court, any person, against whom exists a judgment for the payment of money or who is interested in any property upon which any such judgment is a lien, may pay the amount due on such judgment to the clerk of the court in which such judgment was rendered, and such clerk shall thereupon release and satisfy such judgment upon the records of said court and the county in which such judgment was rendered; and if such judgment has been entered in the records or docketed in any other county than the county in which it was rendered, then a certified copy of the release and satisfaction herein provided to be entered may be recorded in such other county, and the clerk of such other county shall thereupon release and satisfy such judgment upon the records of such other county.  Unless the clerk of the court in which such judgment was rendered sooner turns over the money paid to him on such judgment to the person determined by such court to be entitled thereto, he shall turn the same over to the county treasurer of his county, who shall give said clerk duplicate receipts therefor; and one of said receipts shall be filed with the papers in the case in which such judgment was rendered, and the other shall be retained by said clerk.  Said county treasurer shall at any time pay said money over to the person who shall be determined to be entitled thereto by the order of the court in which such judgment was rendered.

The Idaho Supreme Court has interpreted the foregoing statute as a mechanism for an appealing party to preserve their right to assert a claim on appeal and avoid the mootness

consequence that would otherwise follow from satisfying a judgment. *Frantz v. Osborn*, 167 Idaho 176, 180-81, 468 P.3d 306, 310-11 (2020). Allen asserts that, "because the statute does not make any mention of preserving an appeal," the Court's contrary interpretation should be revisited. This Court, however, has no authority to overrule Idaho Supreme Court precedent. *See Craig v. Gellings*, 148 Idaho 192, 195, 219 P.3d 1208, 1211 (Ct. App. 2009) (stating that "this Court is not free to disregard precedents of the Idaho Supreme Court"). As such, and consistent with *Frantz*, we hold that the Allisons' satisfaction of the judgment pursuant to I.C. § 10-1115 did not render their appeal moot.

**B.      Contract**

The Allisons argue that their contract with Allen was an estimate intended to be a time and materials contract, rather than a bid. Based on this, the Allisons assert Allen failed to produce sufficient evidence of the time he spent or the rates he charged, and thus the district court erred in finding Allen was entitled to the remaining balance owed in the amount of $23,439.83. Allen responds that the district court correctly interpreted the type of contract agreed to by the parties and that its factual findings are supported by the evidence presented at trial.

In support of their claim that the contract was an estimate to complete a time and materials contract, the Allisons rely on *Elec. Wholesale Supply Co. Inc. v. Nielson*, 136 Idaho 814, 41 P.3d 242 (2001) and argue:

> Construction contracts are generally one of three types: time and materials, cost plus, or a fixed bid. "However, Freeman interprets the express terms of a written "cost-plus" contract. The parties' agreement in this case is an oral 'time and materials' agreement lacking specificity." *Elec. Wholesale Supply Co.* [*Inc.*] *v. Nielson*, 136 Idaho 814, 823, 41 P.3d 242, 251 (2001).

Because the Allisons provide no additional context, their reliance on *Elec. Wholesale Supply Co.* is unpersuasive. In *Elec. Wholesale Supply Co.*, the contract was one in which the parties had previously orally agreed would be on a "time and material" basis. At issue were some of the specific terms of the oral agreement reached by the parties, not the type of contract.

The Allisons also argue:

> Another type of construction contract is a bid contract. A bid contract is one in which the person submitting the bid bears the risk that its bid will not provide sufficient compensation because of unforeseen conditions. "If in fact a job is underbid, it is the bidder who bears the risk." [*Welzel*] *v. Cockerill*, No. A-6522-06T3, 2008 WL 2220027, at *1 (N.J. Super. Ct. App. Div. May 30, 2008).

The Allisons' reliance on *Welzel* (a nonbinding, unpublished opinion from the Superior Court of New Jersey) and their conclusory reference to its explanation of a bid contract does not demonstrate any legal or factual error by the district court. The Allisons also cite two additional nonbinding cases--one from the Second Circuit Court of Appeals[3] and one from Alaska[4]--as well as the Restatement of Contracts for general legal propositions regarding contractor liability and assumption of risk. The Allisons fail to explain how these authorities support their assertions, aside from their general disagreement with the district court's characterization of their contract with Allen. We are unpersuaded that the assortment of authority cited by the Allisons demonstrates the district court erred.

The district court found that the Allisons' "theory that any contract to [make changes] were implied-in-fact or implied-in-law contracts is incorrect." Instead, the district court found that the changes were "oral additions to the contract that they had" and that Allen had the burden to "sufficiently detail[ ] the costs of the additional work at trial," a burden Allen met. We agree. At trial, Allen presented evidence of the cost of changes requested by the Allisons and the amount credited for other items. The Allisons have failed to show the district court erred in determining the type of contract between the parties or the amount still owing to Allen.

## C.      Material Defects and Damages

The Allisons argue that Allen incorrectly installed siding, which resulted in parts of the siding bowing. The Allisons also argue that Allen installed sonotubes beneath their deck in a manner that *could* cause the deck to sink. Allen responds that the district court correctly rejected the Allisons' claim that he was entitled to relief based on these alleged defects. We agree with Allen.

---

[3]      *Iacobelli Constr., Inc. v. Cnty. of Monroe*, 32 F.3d 19, 23 (2d Cir. 1994) (explaining that "once construction begins on a project under a contract that is silent about the risk of unforeseen conditions, a contractor bears the risk of running into conditions that were unforeseen at the time he submitted his bid even though they significantly increase the cost of performance"). This case was abrogated by *Minner v. Am. Mortg. & Guar. Co.*, 791 A.2d 826 (Del. Super Ct. 2000).

[4]      *Handle Constr. Co., Inc. v. Norcon, Inc.*, 264 P.3d 367, 371 (Alaska 2011) (citing to the RESTATEMENT (SECOND) OF CONTRACTS § 154 (1981) to define when a party bears the risk of mistake).

An implied warranty of fitness exists implicitly in a construction contract. *Bethlahmy v. Bechtel*, 91 Idaho 55, 67, 415 P.2d 698, 710 (1966). The vendor of a house under construction impliedly warrants that it will be completed in a workmanlike manner and be reasonably fit for occupancy as a place of abode. *Ervin Constr. Co. v. Van Orden*, 125 Idaho 695, 699, 874 P.2d 506, 510 (1993). The implied warranty of fitness, however, does not impose upon the builder an obligation to deliver a perfect house. *Bethlahmy*, 91 Idaho at 68, 415 P.2d at 711. Houses are not built without defects, and defects susceptible of remedy ordinarily would not warrant recession of a contract. *Id*. However, major defects that render a house unfit for habitation, and which are not readily remediable, entitle the buyer to rescission and restitution. *Id*. The builder-vendor's legitimate interests are protected by the rule which casts the burden upon the purchaser to establish the facts which give rise to the implied warranty of fitness, and its breach. *Id*.

In *Ervin Constr. Co.*, the Idaho Supreme Court held that the homeowner was not excused of his obligation under the contract to pay the installments where the homeowner denied the contractor opportunity to cure defects in the home. *Ervin Constr. Co.*, 125 Idaho at 699, 874 P.2d at 510. Regarding the siding in the instant case, the district court cited *Ervin Constr. Co.* and noted it is "manifestly unreasonable for a homeowner to withhold payment and not give a contractor the opportunity to make a repair." Following this principle, the district court noted the relevant evidence presented at trial included installation instructions published by the manufacturer of the siding, testimony from the parties, and testimony from an expert for the Allisons. The district court found the Allisons' expert "to particularly lack credibility." This expert "did not support his claims concerning the siding with photographic evidence, and his testimony about replacement of any bowed or buckling siding was inconsistent with manufacturer recommendations." The district court explained that this expert did not support his other testimony with "photographic or other evidence" and explained that he "appeared to be such an advocate for the Allisons' theories of recovery that he lacked any independence." Finally, the district court noted it "greatly discount[ed]" this expert's opinions.

Further, the district court found that, "contrary to the Allisons' position that all siding must be removed and replaced," Allen and two additional experts testified that only a few of the siding boards needed to be trimmed. Allen promptly offered to trim the boards when the Allisons first brought the issue to his attention. But, as the district court noted, even though Allen was willing

7

to trim the boards and repair the siding for over two years, the Allisons refused to allow him to make the manufacturer-recommended repair. Allowing Allen to trim and reinstall the boards, per the manufacturer's guidelines, would have reduced waste and mitigated any potential damages the Allisons suffered. The district court concluded that the Allisons' "refusal" to let Allen repair the siding was "unreasonable."

The Allisons contend that the district court erred because it failed to recognize that the proposed remedy Allen could have performed would have created a different style of siding because additional nails would have been visible after the remedy. This Court will not reweigh evidence. The district court's finding that Allen attempted to repair the defective and bowed siding and that the Allisons refused this offer is supported by substantial and competent evidence. The Allisons have failed to show error in the district court's denial of their request for damages for the siding on their home.

Regarding the sonotubes, the district court found that there was "no evidence that the sonotubes have settled in nearly three and a half years." The district court explained that the sonotubes had been excavated and poured "in a workmanlike manner and passed inspection." The district court reviewed evidence presented by Allen and concluded that the deck was level and any "damages related to future possible subsidence or settling are speculative and not supported." In considering the testimony offered, the district court found Allen to be a credible witness because his "testimony was consistent and logical" and had been "corroborated by other evidence (photographs and other witness testimony, for example)." In contrast, the district court found James Allison "generally lacked credibility." The district court reviewed photographs of the deck with a level placed on the deck in various positions, showing that the deck was level. The district court found these photographs compelling. The district court also considered testimony from two expert witnesses who testified on behalf of the Allisons regarding the sonotubes. The district court did not find either expert credible. The first expert provided testimony that the district court described as "speculative." The second expert did not conduct soil compaction tests, place a level on the deck, or verify the depth of the topsoil he claimed to have observed. Neither expert documented any settling in their reports which were submitted to the district court. The district court's findings are predicated on credibility determinations within the district court's purview and

8

are supported by substantial and competent evidence. The Allisons have failed to show the district court's denial of their request for damages regarding the sonotubes was erroneous.

**D.      Attorney Fees**

The district court determined Allen was entitled to reasonable attorney fees in the amount of $157,241 under I.R.C.P. 54(e) and I.C. § 45-513. On appeal, the Allisons assert that the award of attorney fees should be reduced, and Allen is only entitled to attorney fees incurred in connection with the foreclosure claim, not the fees incurred defending the construction defect claims. Both parties request attorney fees and costs on appeal. We hold that the Allisons have failed to show the district court abused its discretion in awarding attorney fees. We also hold that Allen is entitled to attorney fees on appeal.

**1.      Attorney fees in the district court**

The Allisons argue the district court abused its discretion in awarding attorney fees in the amount of $157,241 in favor of Allen pursuant to I.R.C.P. 54(e) and I.C. § 45-513. The award of attorney fees rests in the sound discretion of the trial court and the burden is on the person disputing the award to show an abuse of discretion. *Idaho Mil. Hist. Soc'y, Inc. v. Maslen*, 156 Idaho 624, 631, 329 P.3d 1072, 1079 (2014). The Allisons ask this Court to reduce the award of attorney fees to a "reasonable amount" and hold that Allen is only entitled to attorney fees incurred in connection with the foreclosure claim, not the attorney fees incurred defending the construction defect claims.

In arguing that the award of attorney fees was an abuse of discretion by the district court, the Allisons argue that "it can be surmised that Allen spent the vast majority of the legal time incurred in this case defending the Allisons' construction defect time, but the time was not apportioned" and that "it is not possible to identify every duplicative and unnecessary entry. It is enough to look at a $157,000 plus bill and know that is far too much for an uncomplex case." It is not this Court's duty to find error in the record. *See Stewart v. Sun Valley Co.*, 140 Idaho 381, 384, 94 P.3d 686, 689 (2004) (holding that it is not the duty of the appellate court to search the record for error). We decline the Allisons' invitation to "surmise" error by the district court in its determination of a proper fee award with respect to apportionment. Further, because the Allisons have failed to articulate specific fees that were "duplicative" or "unnecessary," they have necessarily failed to show the district court abused its discretion in awarding attorney fees.

9

**2.      Attorney fees and costs on appeal**

Both parties request attorney fees and costs on appeal pursuant to I.C. § 12-121.  An award of attorney fees may be granted under I.C. § 12-121 and I.A.R. 41 to the prevailing party and such an award is appropriate when the court finds that the appeal has been brought or defended frivolously, unreasonably, or without foundation.  If an appeal does no more than simply invite an appellate court to second-guess the trial court on conflicting evidence, the prevailing party may be entitled to attorney fees.  *Anderson v. Larsen*, 136 Idaho 402, 408, 34 P.3d 1085, 1091 (2001).  An award of attorney fees is also appropriate if the law is well settled and the appellant has made no substantial showing that the lower court misapplied the law, or no cogent challenge is presented with regard to the trial court's exercise of discretion.  *Pass v. Kenny*, 118 Idaho 445, 449-50, 797 P.2d 153, 157-58 (Ct. App. 1990).

The Allisons argue that they are entitled to attorney fees and costs on appeal.  Because the Allisons are not the prevailing party on appeal, they are not entitled to an award of attorney fees and costs.  Allen responds that he should be awarded attorney fees on appeal.  The Allisons essentially have asked this Court to reweigh and reevaluate the evidence, second-guess the trial court's findings which were based on conflicting evidence, and arrive at a different conclusion than the district court by reassessing the credibility of the various witnesses.  This we will not do.  Pursuant to the applicable standards set forth above, Allen is awarded attorney fees and costs on appeal.

# IV.
# CONCLUSION

The Allisons appeal is not moot, but they have failed to the show the district court erred in denying their request for damages for the siding placed on their home or the sonotubes installed under their deck. The Allisons have also failed to show the district court erred in awarding attorney fees to Allen.  Accordingly, the Allisons judgment awarding foreclosure of a mechanic's lien and attorney fees is affirmed.  Attorney fees and costs on appeal are awarded to Allen.

Chief Judge TRIBE and Judge FLEMING, **CONCUR**.